JUN -- 7 2016

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COREY DEWAYNE GLADNEY, 1726409, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-4303-N |
| | ) | |
| LORIE DAVIS, Director, TDCJ-CID, | ) | |
| Respondent. | ) | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the

United States District Court for the Northern District of Texas.  The Findings, Conclusions and

Recommendation of the United States Magistrate Judge follow.

## I.  Procedural Background

Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He

challenges his conviction for murder. *State of Texas v. Corey Dewayne Gladney*, No. F-

1059543-J (3rd Crim. Dist. Ct., Dallas County, Tex., Jun. 17, 2011).  Petitioner was sentenced to

forty-five years in prison.

On November 8, 2012, the Fifth District Court of Appeals affirmed Petitioner's

conviction and sentence. *Gladney v. State*, No. 05-11-01088-CR, 2012 WL 5949473 *4 (Tex.

App. – Dallas, 2012, pet. ref'd).  On March 27, 2013, the Court of Criminal Appeals refused

Petitioner's petition for discretionary review.  PDR No. 0022-13.

On October 1, 2013, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Gladney*, Application No. 81,408-01. On November 24, 2014, the Court of Appeals denied the petition without written order on the findings of the trial court.

On November 25, 2014, Petitioner filed this federal petition. He argues:

1.    He was denied effective assistance of trial counsel in violation of his Sixth Amendment right because his trial counsel:

     a.    Failed to preserve errors concerning the trial court's limitation of cross examination;

     b.    Failed to impeach the State's witnesses;

     c.    Failed to move the court to suppress witness identifications of him;

     d.    Failed to impeach the State's witnesses with their criminal records;

     e.    Failed to object to the authenticity of a homemade video of the shooting;

     f.    Failed to make objections to the State's delay in adding a witness to its witness list;

     g.    Failed to object to the victim's mother being present in the courtroom after the rule was invoked;

     h.    Failed to move the trial court for a suppression hearing regarding the statements of State's witnesses Demerick Johnson and Brandon Jones; and

      i.      Counsel's overall performance had a cumulative effect on Petitioner's Sixth Amendment right to effective assistance of counsel.

2.      The trial court committed error in violation of Petitioner's Sixth and Fourteenth Amendment rights because it:

      a.      Did not give an adequate explanation for limiting the cross-examination of the victim's mother;

      b.      Allowed and admitted hearsay testimony concerning the contents of an anonymous 911 phone call received by Detective Brady; and

      c.      Permitted the prosecution to add a last minute witness to the State's case the day before trial.

3.      The prosecution erred, in violation of Petitioner's Sixth and Fourteenth Amendment rights when it:

      a.      Withheld its key witness from the State's witness list until one day prior to trial;

      b.      Failed to investigate the video surveillance footage of the Time Saver Food Market;

      c.      Violated the rule of sequestration; and

      d.      Failed to authenticate the video tape produced by John Robinson.

4.      The police violated Petitioner's Fifth, Sixth and Fourteenth Amendment rights when they:

      a.      Used improper interrogation techniques; and

      b.      Failed to preserve a 911 call with exculpatory value.

On April 15, 2015, Respondent filed her answer.  Petitioner did not file a reply.  The

Court now finds the petition should be denied.

## II.  Factual Background

The following factual background is taken from the appellate court's decision.

> There is evidence in the record that [the victim] was sitting in his vehicle in the crowded parking lot of a shopping center when Gladney approached his vehicle and fired a handgun into it.  [The victim] attempted to drive his vehicle to safety but crashed into another car in the parking lot.  [The victim] then attempted to escape on foot but was shot several more times by Gladney in front of several witnesses.

> Gladney fled the scene in the vehicle of Sylvester Spicer.  The State presented evidence from Detective Mary Brady who, over Gladney's objection, testified that she had received an anonymous phone call claiming that Spicer had disposed of the handgun used in the murder while he was selling his vehicle in Houston.

*Gladney*, 2012 WL 5949473 at *1.

## III.  Discussion

### 1.    Standard of Review

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the

AEDPA), 28 U.S.C. § 2254 provide:

    (d)    An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

        (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

        (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000).  Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

**2.      Procedural Bar**

Respondent argues that a number of Petitioner's claims are procedurally barred. Respondent states some of the claims are barred because Petitioner failed to raise the claims in state court, while other claims are barred because, although raised in state court, the court denied the claims as procedurally defaulted.

**(A)      Failed to Raise Claims in State Court**

Respondent argues the following claims are procedurally barred because Petitioner failed to raise the claims in state court: 1(i) (trial counsel failed to move for a suppression hearing regarding the statements of Demerick Johnson and Brandon Jones); 3(b) (the prosecution failed to investigate the video surveillance footage of the Time Saver Food Market); 3(c) (the prosecutor violated the rule of sequestration); and 3(d) (the prosecutor failed to authenticate the video tape produced by John Robinson).

A federal court will ordinarily not review a claim where a petitioner has not presented his claim to the highest court of the state and the state court to which he would be required to present

his claims would now find the claim procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 729-31 (1991).

The record reflects that Petitioner failed to raise these claims in either a petition for discretionary review or his state habeas petition. Accordingly, the Texas Court of Criminal Appeals has not reviewed the claims. If this Court were to require Petitioner to return to state court to exhaust these claims, they would be subject to dismissal because it is too late for Petitioner to file a petition for discretionary review and a second state habeas petition would be subject to an abuse-of-the-writ dismissal.

**(B)    Procedurally Defaulted Claims**

Respondent argues the state habeas court found the following claims procedurally barred because Petitioner failed to raise the claims on direct appeal: 2(a) (the trial court committed error because it did not provide an adequate explanation for limiting the cross-examination of the victim's mother); 4(a) (the police violated Petitioner's rights when they used improper interrogation techniques); and 4(b) (the police violated Petitioner's rights when they failed to preserve a 911 call).

Federal courts may not review a state court decision that rests on an adequate and independent state procedural default, unless the habeas petitioner shows cause for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *Id*; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).

In this case, although Petitioner raised these claims in his state habeas petition, he failed to raise the claims on direct review. The state habeas court found the claims procedurally barred because Petitioner was prohibited from raising claims in his habeas petition that could have been raised on direct review. *Ex parte Gladney* at 99-100 (citing *Ex parte Cruzata*, 220 S.W.3d 518, 520 (Tex. Crim. App. 2007)).

To overcome the procedural bar, a petitioner must demonstrate: (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a "fundamental miscarriage of justice." *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 750). Petitioner has shown no cause for his failure to present these claims to the Texas Court of Criminal Appeals.

Petitioner has also failed to demonstrate the need to prevent a miscarriage of justice. This exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). To establish the required probability that he was actually innocent, a petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show it was more likely than not that no reasonable juror would have convicted him in light of the new evidence. *Id.* (citing *Schlup*, 513 U.S. at 327). Petitioner has presented no new, reliable evidence showing that it was more likely than not that no reasonable juror would have convicted him. Petitioner has not overcome the state procedural bar. Accordingly, the procedural default doctrine bars federal habeas relief on these claims.

3.      **Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel.  To sustain a claim of

ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was

deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive

Petitioner of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the

Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and

"every effort [must] be made to eliminate the distorting effects of hindsight."  *Strickland*, 466

U.S. at 689.  Courts, therefore, must "indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance."  *Id.*

Even if counsel is proven deficient, a petitioner must prove prejudice.  To prove such

prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would

have been different but for counsel's unprofessional errors."  *Crane v. Johnson*, 178 F.3d 309,

312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694).  "[T]he mere possibility of a different

outcome is not sufficient to prevail on the prejudice prong."  *Id.*  "Rather, the defendant must

demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'"  *Id.*

(quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

(A)      **Failed to Object**

Petitioner claims his counsel was ineffective when counsel failed to object to: (1) the trial

court's limitation of cross-examination; (2) a homemade video of the offense; (3) the State's

delay in adding a witness to the witness list; and (4) the victim's mother being present in the

courtroom during trial.

Petitioner claims his counsel failed to object when the trial court limited his cross-examination of the victim's mother regarding her son's role as a drug dealer, and thus failed to preserve the issue for appellate review. The record shows, however, that the State filed a motion *in limine* to exclude prior crimes and bad acts of the victim. (ECF No. 12-10 at 42-43.) Although defense counsel argued against the motion *in limine*, the court granted the motion. (ECF No. 12-3 at 9-12.) Additionally, on state habeas review, defense counsel filed an affidavit responding to Petitioner's claim. Counsel stated:

> Among the multitude of Mr. Gladney's contentions is an allegation that I did not make a sufficient offer of proof with respect to the cross-examination of the victim's mother. In this regard, I approached the bench during guilt innocence and punishment. I did not have more specific information than what was stated in the offer made during punishment. For example, I did not have proof that on this occasion the victim was actually involved in a drug transaction.
>
> During the guilt innocence stage, I raised questions regarding the reason for the victim being there, and people getting in and out of the car including that the incident occurred in the very early morning hours and the fact that no one could say exactly where the victim worked among other suspicious circumstances. Thus, I was satisfied that I had raised the specter of illegal activity without actually saying that a drug deal occurred. I was also mindful that attacking a decedent's character through his surviving mother could alienate a jury.
>
> * * *
>
> In two related issues, Mr. Gladney asserts that I failed to object to the trial court's exclusion of evidence demonstrating the decedent's criminal history on the record and he identifies certain specific arguments that he believes I should have made in support thereof. As clearly reflected in the record, I argued against exclusion of the decedent's criminal history at a pre-trial hearing on this issue, amongst others. Pursuant to a motion *in limine* filed by the State, a bench conference was held during trial before I intended to question the decedent's mother on this topic. It is also apparent from the record that, during the punishment phase of trial, I once again argued at length for the admission of the decedent's criminal history on multiple grounds. I ensured that my position on admitting this evidence was on the record.

*Ex parte Gladney* at 109-110.

On direct appeal, the court found defense counsel did not preserve the issue regarding cross-examination of the victim's mother during the guilt/innocence phase of the trial because counsel failed to make an offer of proof prior to the jury charge. *Gladney*, 2012 WL 5949473 at *3. The appellate court found the issue was preserved during the punishment phase. Petitioner, however, has failed to show he was prejudiced by his counsel's failure to preserve the issue for appellate review during the guilt/innocence phase. The appellate court found that whether the victim was a drug dealer was not directly relevant to the murder. *Id.* at *4. The court stated:

> Allowing Gladney to impeach the victim's character with extrinsic evidence would waste time and confuse the issue by focusing the jury's attention on the victim's character rather than the defendant's personal responsibility and moral culpability.

*Id.* Petitioner has failed to show that the state court's decision to deny relief on this claim was unreasonable or was contrary to clearly established federal law.

Petitioner also argues his counsel was ineffective when counsel failed "to object to a homemade video of the shooting, as to the authenticity, and taken by alleged eye witness John Robinson." (ECF No. 3 at 8.) The record shows, however, that John Robinson testified at trial as to the video's authenticity. (ECF No. 12-5 at 69-79.) He testified he was the person who took the video and that he provided the video to the police. (*Id.*) Although Petitioner contends the video could have been altered, Petitioner has submitted no evidence substantiating this claim. Petitioner has failed to show his counsel was ineffective for failing to object to the authenticity of the video.

Petitioner claims defense counsel was ineffective when he failed to object when the State added witness John Robinson to the witness list "just a day before trial was to begin." (ECF No. 3 at 9.) The record shows that this witness was listed on the State's original witness list filed the

day of the pre-trial hearing on June 14, 2011. (ECF No. 12-10 at 39; ECF No. 12-3 at 7.) Under the Texas Code of Criminal Procedure, there is no statutory requirement that the State produce its witness list for non-expert witnesses prior to the day of trial. Petitioner's claim is without merit.

Petitioner claims counsel was ineffective when counsel failed to object to the victim's mother being in the courtroom during trial and after the rule of sequestration had been invoked. The record shows the victim's mother was the first witness to testify at trial and during punishment. (ECF No. 12-5 at 18; 12-6 at 116.) On state habeas review, defense counsel responded to Petitioner's claim as follows:

> I did not object to the victim's mother remaining in the Courtroom because she was not a fact witness moreover I did not believe that her testimony would be materially affected by hearing the testimony of any other witness as required by Texas Rule of Evidence 614(4).

*Ex parte Gladney* at 113.

Petitioner has failed to show how he was prejudiced by his counsel's failure to exclude the victim's mother from the courtroom after she testified. Petitioner's claim is without merit.

### (B)    Failed to Impeach

Petitioner claims his counsel was ineffective because counsel failed to impeach the State's witnesses. He argues counsel's cross-examination of Brandon Jackson, John Robinson, Demerick Johnson, Milton Martin and Brandon Jones failed to sufficiently show the inconsistencies in their testimony regarding the identity of the shooter. Petitioner also claims defense counsel failed to sufficiently cross-examine John Robinson, Demerick Johnson, and Brandon Jones regarding their criminal histories.

The record shows defense counsel cross-examined Brandon Jackson regarding his identification of Petitioner as the shooter. Counsel question Johnson about his statements to

police regarding the clothes the shooter was wearing, and whether those statements were inconsistent with his trial testimony. (ECF No. 12-5 at 42-43) Counsel also questioned Johnson regarding whether the photo line-up was suggestive since Johnson had seen a video of Petitioner prior to selecting Petitioner from the photo line-up, and he had also been told by a friend that Petitioner was the shooter. (*Id.* at 53-54.)

The record shows defense counsel cross-examined John Robinson regarding his criminal record. Defense counsel cross-examined Robinson about his pending charge for aggravated sexual assault and asked about Robinson's two felony convictions. (*Id.* at 80-81.) Defense counsel also questioned whether Robinson was testifying for the State in the hope that the State would make a favorable offer on his pending aggravated sexual assault charge. (*Id.*) Petitioner has submitted no evidence that Robinson testified inconsistently regarding the identity of the shooter.

The record shows that witness Demerick Johnson testified on direct examination that he had convictions for theft and evading arrest. (*Id.* at 103.) He also stated he was on probation at the time of trial. (*Id.*) Defense counsel cross-examined Johnson about his probation. (*Id.* at 116.) Johnson also testified that he had known Petitioner "most of [his] life" and that he saw Petitioner shoot the victim. (*Id.* at 104, 108.) Petitioner has cited no evidence that Johnson made any inconsistent statements regarding Petitioner's identity as the shooter.

The record shows Milton Martin testified he was standing next to the victim when the victim was shot, but that he did not see the shooter because the shooter came up from behind him. (*Id.* at 124-126.) Martin therefore did not testify as to the identity or appearance of the shooter.

Brandon Jones testified he did not see the shooting, but after he heard the shots fired he saw Petitioner and others with guns in their hands. (*Id.* at 133-134.) Jones was asked on direct and cross-examination about his criminal record. Jones stated that at the time of trial, he was on probation for unlawful possession of a firearm by a felon. (*Id.* at 133, 140.) Defense counsel questioned Johnson about this conviction, and the fact that Johnson had a felony conviction prior to the unlawful possession of a firearm conviction. (*Id.* at 139-40.)

Petitioner has failed to establish his counsel was ineffective in cross-examining witnesses. He has failed to state what other questions counsel should have asked or how further questions would have likely changed the outcome of the trial. Petitioner's claims should be denied.

**(C)     Motion to Suppress**

Petitioner claims his counsel was ineffective when counsel failed to file a motion to suppress the photographic line-up identification by Brandon Jackson as overly suggestive.

Petitioner states Brandon Jackson testified at trial that he did not know Petitioner's name at the time of the shooting and that Demerick Johnson told him Petitioner's name. (ECF No. 3 at 7.) Petitioner also states Jackson viewed the video-tape made by John Robinson prior to viewing the photo line-up and that police told Jackson that the person in the video was the shooter. (*Id.*)

The Supreme Court has held that the Constitution mandates exclusion of testimony regarding a photographic lineup only if "law enforcement officers use[d] an identification procedure that is both suggestive and unnecessary" and "improper police conduct created a substantial likelihood of misidentification." *Perry v. New Hampshire*, 132 S.Ct. 716, 724 (2012).

In this case, the record shows that police did not act improperly or use suggestive identification procedures. Jackson testified he had seen Petitioner around the neighborhood, but did not know his name. (ECF No. 12-5 at 44-45.) Jackson stated he was sitting in the front passenger seat of the victim's car when he saw Petitioner walk up to the driver's side of the car and shoot the victim. (*Id.* at 31-37.) Jackson stated that Demerick Johnson told him Petitioner's name. (*Id.* at 54.) He also stated Johnson showed him a video of Petitioner and told him Petitioner was the shooter. (*Id.* at 53-54.) Jackson testified he picked Petitioner's photograph from a photographic line-up and that the police did not suggest which photograph he should choose. (*Id.* at 46.) Petitioner has failed to show that law enforcement showed a video to Jackson before the photographic line-up, or that police told Jackson that Petitioner was the shooter. Petitioner's claim of ineffective assistance of counsel should be denied.

**(D)    Cumulative Error**

Petitioner argues his ineffective assistance of counsel claims resulted in cumulative error. The cumulative error doctrine provides that "an aggregation of nonreversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998). Federal habeas corpus relief is granted on the basis of cumulative errors only if the error is of a constitutional dimension. *See Livingston v. Johnson,* 107 F.3d 297, 309 (5th Cir. 1997) (citation omitted); *see also Yohey v. Collins,* 985 F.2d 222, 229 (5th Cir. 1993) (holding habeas relief is only granted where "(1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial the resulting conviction

violates due process.' ") (quoting *Derden v. McNeel,* 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc)).

In this case, Petitioner has failed to establish any claim of ineffective assistance of counsel. His claim of cumulative error is therefore without merit. *See United States v. McIntosh,* 280 F.3d 479, 484 (5th Cir. 2002) (stating petitioner "has not established any error; therefore, there is nothing to cumulate"); *United States v. Williams,* 264 F.3d 561, 572 (5th Cir. 2001) (no cumulative error where defendant failed to identify single error in jury selection); *Miller v. Johnson,* 200 F.3d 274, 286 n.6 (5th Cir. 2000) (petitioner who failed to demonstrate any error during trial could not establish cumulative error). This claims should be denied.

### 4.      Trial Error

Petitioner claims the trial court violated his constitutional rights when the court: (1) admitted hearsay evidence; and (2) allowed the prosecutor to add a last minute witness to the State's witness list a day before trial.

On federal habeas review of state court convictions, a federal harmless error standard applies. *See Brecht v. Abrahamson,* 507 U.S. 619, 637–38 (1993). To be actionable, a trial court error must have " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht,* 507 U.S. at 637 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). Under this standard, a petitioner is not entitled to federal habeas relief based on trial error unless he can establish that the error resulted in actual prejudice. *See Brecht,* 507 U.S. at 637. "[A] state defendant has no constitutional right to an errorless trial." *Bailey v. Procunier,* 744 F.2d 1166, 1168 (5th Cir. 1984).

### (A)      Hearsay

Petitioner claims the court allowed hearsay evidence when it allowed Detective Brady to testify about the contents of an anonymous 911 call.

The record shows Detective Brady testified that police received a 911 tip that witness Sylvester Spicer had disposed of the murder weapon in Houston. (ECF No. 12-6 at 38.) Defense counsel objected to this testimony on the basis of hearsay, and the court overruled the objection. (*Id.*)

Spicer testified at trial that he was at the scene of the shooting, but he did not see the shooting. (ECF No. 12-5 at 160-61.) Spicer stated that after he heard the gunshots, he pulled his car up to Petitioner and offered Petitioner a ride. (*Id.* at 150.) Spicer stated that after Petitioner got into his car, Petitioner shot a gun into the air. (*Id.*). Spicer stated he later found a bullet casing in his car and he threw the casing in the trash. (*Id.* at 152-53.) Spicer testified he did not see Petitioner's gun again after Petitioner fired the shot in the air. (*Id.* at 151.)

On direct appeal, the state court considered Petitioner's claim and stated:

> In the present case, the evidence at issue concerned the location and possible means of disposal of the handgun allegedly used to kill [the victim]. Certainly, being unable to produce the alleged murder weapon may create some doubt in the mind of the jury, and offering an explanation for its inability to present the weapon at trial may have helped the State assuage that doubt. Here, however, the other evidence showing Gladney's guilt is overwhelming and renders the State's inability to produce the murder weapon trivial. Three separate witnesses identified Gladney as the shooter. The testimony of one of these eye-witnesses was corroborated by a video he was recording prior to and during the shooting. That same witness also identified Gladney as the shooter from a surveillance tape recorded by a business located adjacent to the crime scene.

> Given the relative insignificance of the evidence about the anonymous phone call in comparison to the weight of the properly admitted evidence that Gladney was the shooter, we conclude that the complained-of hearsay evidence had no effect or only a slight effect on the jury's decision. Because appellant's substantial rights were not affected by any error the trial court may have made by admitting Brady's testimony about the anonymous phone call, we overrule appellant's first issue.

*Gladney*, 2012 WL 5949473 at *2.

Petitioner has failed to show that the State court's denial of this claim was unreasonable or contrary to clearly established federal law. This claim should be denied.

**(B)     Witness**

Petitioner claims the trial court committed error when it allowed the State to add John Robinson as a "last minute" witness to its witness list. As discussed above, the State timely provided notice of this witness prior to trial. This claim is without merit.

**5.     Prosecutorial Misconduct**

Petitioner claims the prosecutor committed misconduct when he added witness John Robinson to the witness list the day before trial.

Prosecutorial misconduct implicates due process concerns. *Foy v. Donnelly*, 959 F.2d 1307, 1316 (5th Cir. 1992). When a petitioner asserts a due process violation, the Court must determine whether the prosecutorial comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly,* 416 U.S. at 642).

As discussed above, the prosecutor provided its witness list, including the name of John Robinson, at the pretrial hearing. Petitioner has failed to show that the prosecutor was required to provide its witness list of non-expert witnesses at an earlier date. Petitioner's claim is without merit.

6.     **Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a

constitutionally protected interest.  Accordingly, the state courts' decision to deny relief is not

contrary to or does not involve an unreasonable application of clearly established federal law and

is not based on an unreasonable determination of the facts in light of the evidence presented in

the state court proceedings.

**IV.  Recommendation**

For the foregoing reasons, the Court recommends that Petitioner's habeas corpus petition

pursuant to 28 U.S.C. § 2254 be denied with prejudice for failure to make a substantial showing

of the denial of a federal right.

Signed this ___ day of _____, 2016.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).